[No. D040242. Fourth Dist., Div. One. Oct. 8, 2002.]

In re S. O., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
I. L., Defendant and Appellant.

## COUNSEL

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Kathryn E. Krug, Deputy County Counsel, for Plaintiff and Respondent.

Julie E. Braden, under appointment by the Court of Appeal, for Minor.

## OPINION

**KREMER, P. J.**—I. L. (Mother) appeals following the juvenile court's dispositional order declaring her son, S. O., a dependent and allowing her to retain custody. She contends the allegations of the dependency petition fail to state a cause of action and there is no substantial evidence supporting the jurisdictional finding (Welf. & Inst. Code, § 300, subd. (b)).[1] We affirm.

### BACKGROUND

Before S.'s birth, Mother had six children. Enrique O. (Enrique) was the presumed father of all but the eldest of these six children, Y. C. Enrique is also S.'s presumed father.

In December 2000, the San Diego County Health and Human Services Agency (the Agency) filed dependency petitions for S.'s six siblings. They were made juvenile court dependents because in November and December, they were exposed to violent confrontations in the family home between Enrique and Mother (after drinking, Enrique slapped Mother's face repeatedly in front of the children) (§ 300, subd. (b)) and from 1997 to December 2000, Enrique sexually abused Y. C. (§ 300, subds. (d), (j)). The children were placed in foster care. The court ordered that Enrique have no contact with Y. C. and that his visits with the other children be supervised. Mother's

---

[1] All statutory references are to the Welfare and Institutions Code.

visits with all of the children were supervised. Enrique moved out of Mother's home on August 1, 2001, but continued to pay the rent.

The first time Mother was allowed an unsupervised visit with S.'s siblings, in November 2001, she allowed Enrique to see the children. According to Agency social worker Paul Provencio, while Mother was visiting the children at a park, Enrique came to the park and joined the visit. Mother claimed that the contact was not a visit; it had occurred when she and the children were "walking by" a family gathering or "walking to the store."[2] The Agency immediately suspended the unsupervised visits.

Enrique went to the hospital just after S.'s January 2002 birth. There, he spoke with Mother and hospital social worker Lin Nimitz. He was defensive and argumentative, complaining that the Agency had treated him unfairly, asserting that he "did not do anything" to "that girl," and telling Mother not to sign an application for emergency aid and a medical release. Mother initially would not sign the documents; she did so only after Nimitz explained their purpose and said that the Agency intended to detain S. with Mother.

Mother told Nimitz that she had arranged for Enrique to drive her and S. home from the hospital. After coming to the hospital and speaking with Mother, Enrique, and Nimitz, Provencio concluded that this was in fact what Mother had planned.[3] When Provencio asked Mother if this were so, however, she said that she was unsure. When Provencio told her that her case plan did not allow Enrique to drive her or any of the children, Mother said that she could ask her children's godfather for a ride. Mother later denied that she had arranged for Enrique to take her home, claiming that he had come to the hospital to sign papers and see S. and that she had planned for someone else to take her home.

In February 2002, the Agency filed a dependency petition for S. The first count alleged that he was at risk for exposure to violent confrontations in the family home in that Enrique had slapped Mother's face repeatedly in front of S.'s siblings and had not attended the required domestic violence class,

---

[2]It appears that Enrique's visits were to be supervised by someone other than Mother, although the record does not explicitly say so. Such a requirement would be reasonable in view of the true finding that Enrique had been violent with Mother in the children's presence. The record does not reveal whether Y. C. was present at the November visit.

[3]Mother claims that because she is exclusively Spanish speaking, and the record does not show whether Provencio speaks or understands Spanish, "any reported communication between Mother and Provencio which occurred without an interpreter is highly unreliable." This claim is speculative, at best. Provencio may very well speak and understand Spanish or, if not, someone able to interpret may have been present during their conversations.

anger management class, and individual therapy. (§ 300, subd. (b).) The second count alleged that from January 1997 to December 2000, Enrique had sexually abused Y. C. (§ 300, subd. (j).)

S. was detained with Mother. At the February 13, 2002 detention hearing, the court ordered that Enrique's visits be supervised by someone other than Mother.

In his detention report, Provencio wrote the following in connection with the dependencies of the older children. "[M]other is working through her denial as to the molest of the older daughter and has made extremely slow progress in addressing the protective issue and in implementing her service plan to reunify her with her older children. Although [M]other has made some progress and has a good record of attendance[, her] service providers for individual therapy and SAFE Paths both report that [she] is not fully able to protect or care for her older children and have yet to even recommend unsupervised visitation." Sometime in February 2002, Provencio decided to authorize unsupervised visits between Mother and her older children because he believed that she "had come to a point at which she could begin to show the Agency that she had learned the ability to provide protection for her children."

Despite the prohibition of contact between Enrique and Y. C., the Agency arranged a March 15, 2002, visit for Mother, Enrique, Y. C., and two of S.'s other siblings. Provencio supervised the visit. During the visit, Enrique became upset and argued with Provencio. Mother did not intervene. Provencio testified that with supervision, it was permissible for her and Enrique to visit the children at the same time. Provencio denied that he had encouraged Mother to avoid contact with Enrique; in fact, he believed that they should have some contact regarding the children. Provencio acknowledged that it was inappropriate for Mother and Enrique to argue in front of the children and that the Agency was no longer setting up simultaneous visits for Mother and Enrique.

On March 26, 2002, the court entered a restraining order preventing Enrique from contacting Mother and S., although Mother believed this was unnecessary. By S.'s April 26 jurisdictional dispositional hearing here, in reference to the older children's dependencies Mother had completed therapy, a parenting class, and a domestic violence course. She was still involved in a women's domestic violence group. Her therapist, Maricela Larkin, believed that she needed no additional sessions because she had reached her goals of protecting the children and breaking the domestic violence cycle. Larkin opined that so long as Mother remained away from Enrique, Mother's behavior did not pose a risk to S.

Provencio testified that Mother had made significant progress with her case plan and was likely to reunify with her older children soon. He believed, however, that S. would be at risk of harm if not supervised by the Agency because Mother had demonstrated her inability to "keep [Enrique] out of visitation or situations where they could be together." Provencio admitted that he had no evidence that in the three months since S.'s birth, Enrique had come to Mother's home or Mother had taken S. to see Enrique. Provencio nevertheless maintained that Mother had allowed unauthorized contact in those three months, citing the hospital visit and the park visit. He acknowledged, however, that the park visit occurred before S.'s birth and that Enrique was not alone with S. at the hospital.

Mother testified that she could not control Enrique when he became angry but believed that if he came to her home and demanded visitation, she could make him go away by telling him to leave. She also testified that she would call the police if he came to her house. However, when asked whether she planned to reunite with Enrique, she answered, "I don't know." Furthermore, she admitted that she did not have a plan for arranging visits between S. and Enrique without the Agency's involvement, and indeed said that she planned to have "[s]omeone from the Agency, or a social worker" supervise the visits.

The court made a true finding on the section 300, subdivision (b) allegation; dismissed the section 300, subdivision (j) allegation; declared S. a dependent; and placed him with Mother.

### THE PETITION

According to *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 [58 Cal.Rptr.2d 494], a petition's failure to state a cause of action can be raised for the first time on appeal. Mother relies on that case in contending that the petition here fails to state a cause of action under section 300, subdivision (b). *In re Shelley J.* (1998) 68 Cal.App.4th 322, 328-329 [79 Cal.Rptr.2d 922], however, holds that the sufficiency of a petition cannot be challenged for the first time on appeal. We believe that *In re Shelley J.* represents the better view.[4] "Given that lay social workers are usually lumbered with the task of writing petitions, they must be given a certain amount of slack. If the parent believes that the petition does not 'adequately communicate' the [Agency]'s concerns or is otherwise misleading, the onus is on the parent to challenge the petition at the pleading stage." (*In re Jessica C.* (2001) 93

---

[4]In two other cases the parties cite, *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1133-1134 [106 Cal.Rptr.2d 465] and *In re Janet T.* (2001) 93 Cal.App.4th 377, 383 [113 Cal.Rptr.2d 163], the parents asserted the insufficiency of the petitions in the trial court.

Cal.App.4th 1027, 1038, fn. 8 [113 Cal.Rptr.2d 597], citing *In re Fred J.* (1979) 89 Cal.App.3d 168, 176-177 [152 Cal.Rptr. 327].) Accordingly, Mother has waived her right to contest the sufficiency of the petition by failing to do so below. In any case, she is incorrect in asserting that the petition is deficient.

■ " '[N]otice of the allegations upon which the deprivation of custody is predicated is fundamental to due process. [Citations.] Accordingly, a parent must be given notice of the specific factual allegations against him or her with sufficient particularity to permit him or her to properly meet the charge.' " (*In re Fred J., supra,* 89 Cal.App.3d at p. 175, italics omitted, quoting *In re J. T.* (1974) 40 Cal.App.3d 633, 639 [115 Cal.Rptr. 553].) "In the initial 'pleading' stage, the role of the petition is to provide 'meaningful notice' that must 'adequately communicate' social worker concerns to the parent. [Citation.] If the parent believes that the allegations, as drafted, do not support a finding that the child is 'within' one of the descriptions of section 300, the parent has the right to bring a motion 'akin to a demurrer.' " (*In re Jessica C., supra,* 93 Cal.App.4th at p. 1037, quoting *In re Fred J., supra,* 89 Cal.App.3d at pp. 175-177.) "We construe well-pleaded facts in favor of the petition [citation] to determine if the [Agency] pleaded a parent failed to 'supervise or protect the [child]' " within the meaning of section 300, subdivision (b). (*In re Alysha S., supra,* 51 Cal.App.4th at p. 397.) "[A] facially sufficient petition . . . does not require the pleader to regurgitate the contents of the social worker's report into a petition, it merely requires the pleading of essential facts establishing at least one ground of juvenile court jurisdiction." (*Id.* at pp. 399-400.)

■ Section 300, subdivision (b) allows a dependency where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." The petition here alleged: "On or about January 23, 2002 the child is at risk for exposure to violent confrontations in the family home between the parents involving the use of physical force in that the father previously slapped the mother in the face repeatedly in front of the siblings and the father has not attended the required domestic violence class, anger management class and individual therapy which places the child at substantial risk of serious physical harm."

Mother argues that the petition fails to allege a current substantial risk of serious physical harm, in that allegation of slapping was more than one year old, she was no longer living with Enrique, and he was not permitted unsupervised contact with the children. None of these three facts is evident from the face of the petition, however. Furthermore, "domestic violence in

the same household where children are living *is* neglect; it is a failure to protect [them] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194 [60 Cal.Rptr.2d 315].) The petition here sets forth, in sufficient detail to confer notice of the Agency's concerns, specific facts alleging why there was a substantial risk that S. would suffer serious physical harm as a result of Mother's failure or inability to protect him adequately, i.e., Enrique's past violence in the older children's presence and his failure to obtain treatment.

THE JURISDICTIONAL FINDING

Mother contends there is no substantial evidence supporting the jurisdictional finding under section 300, subdivision (b). She argues that at the time of the hearing, S. was not at substantial risk and the finding was based solely on speculation that without the Agency's supervision, she might allow Enrique unsupervised contact with S. To support her argument, she notes the following: Enrique slapped her more than one year earlier; she was no longer living with him; he was not permitted unsupervised contact with the children; there had been no such contact for three months; she had obtained a restraining order and completed her reunification plan; and there was no evidence to support social worker Provencio's assumption that she was going to permit Enrique to drive her and S. home from the hospital, thereby allowing Enrique unsupervised contact with S.

Section 300, subdivision (b) allows a dependency where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." The Agency "has the burden of showing specifically how [S. has] been or will be harmed." (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318 [49 Cal.Rptr.2d 139].) This must be established by a preponderance of the evidence. (*Ibid.*) On appeal, the jurisdictional findings are reviewed under the substantial evidence test. (*Id.* at p. 1319.) We review the evidence in the light most favorable to the juvenile court's order. (Cf. *In re Katrina C.* (1988) 201 Cal.App.3d 540, 547 [247 Cal.Rptr. 784].)

"[T]he question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 [2 Cal.Rptr.2d 429], italics omitted.) "[P]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue. (*Ibid.*) Mother is correct that the domestic violence here had occurred more than a year before the

jurisdictional dispositional hearing, Enrique had moved out of the home almost nine months before the hearing, he had not had unsupervised contact with S. since his birth three months earlier, and Mother had completed services in the dependencies of her older children. Other factors, however, demonstrate a risk that she would allow Enrique unsupervised contact with S.

Mother's progress on her case plans in the other dependencies had been very slow and she had yet to reunify with her older children. She had permitted Enrique to have unsupervised contact with those children fewer than six months before the hearing in spite of a prohibition against such contact. She had apparently planned for Enrique to take her and S. home from the hospital, thereby allowing Enrique unsupervised contact with S. The restraining order was recent, having been issued just one month before the hearing. Most tellingly, at the hearing Mother testified that she was unsure whether she planned to reunite with Enrique and admitted that she had no plan for arranging visits between S. and Enrique without the Agency's assistance, and indeed expected that Agency personnel would supervise the visits.

We reject Mother's suggestion that the juvenile court acknowledged that S. was not at substantial risk of harm. While the court observed that Mother had "made terrific progress," and was "starting to understand what it takes," it also expressed "real concerns about [M]other's ability to protect the baby from [Enrique]" and noted its "concern . . . that the only reason she's enforcing [supervised] visits with [Enrique] is because of the involvement [of] the court."

Finally, citing *In re Damonte A.* (1997) 57 Cal.App.4th 894 [67 Cal.Rptr.2d 369] and *In re Andres G.* (1998) 64 Cal.App.4th 476 [75 Cal.Rptr.2d 285], Mother asserts that the Agency's recommendation and the court's order that S. be detained and then placed with her are inconsistent with the finding of jurisdiction and that the practice of placing a child with a parent has been disapproved. Mother is incorrect. ▉ What is proscribed is removing a child from parental custody, then placing the child with the Agency and immediately detaining him or her with the parent. (*In re Andres G., supra,* 64 Cal.App.4th at pp. 478-483.) That was not the situation here.

▉ "Although the evidence is by no means overwhelming, given the deference we must accord a juvenile court's factual findings [citation], we conclude there is substantial evidence to support the jurisdictional findings." (*In re Basilio T.* (1992) 4 Cal.App.4th 155, 169 [5 Cal.Rptr.2d 450].)

## DISPOSITION

The orders are affirmed.

Huffman, J., and McIntyre, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 18, 2002.