Filed 5/12/14 Jasmine B. v. Superior Court CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JASMINE B., | D065414 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. SJ10558D) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY et al., | |
| Real Parties in Interest. | |

PROCEEDINGS for extraordinary relief after reference to a Welfare and Institutions Code section 366.26 hearing. Edlene C. McKenzie, Commissioner. Petition denied; request for stay denied.

Dependency Legal Group of San Diego and John P. McCurley for Petitioner.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Erica R. Cortez, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

Jasmine B. seeks writ review of the juvenile court's February 10, 2014, order setting a Welfare and Institutions section 366.26 hearing (all statutory references are to the Welfare and Institutions Code). Jasmine contends the court erred by denying reunification services (§ 361.5, subd. (b)(10) & (11)). We deny Jasmine's petition.

BACKGROUND

Jasmine has a long history of violence, drug abuse and mental instability. Her three older children, Anthony B., A.B. and Christopher B., were removed from her care when they were infants, and her parental rights were terminated as to all three children. When Anthony was born in April 1999, he and Jasmine tested positive for heroin, and there were concerns about Jasmine's mental health. Jasmine did not comply with her reunification plan, which included drug testing and treatment, and services were terminated at the six-month review hearing. The case closed in June 2001 when Anthony's adoption was finalized. While pregnant with A.B., Jasmine tested positive for methamphetamine. After A.B. was born in December 2002, Jasmine behaved bizarrely and there were concerns about her mental health. Jasmine's reunification plan included a substance abuse program and therapy. She attended those services just a few weeks and failed to reunify with A.B. The case closed in November 2004 when A.B.'s adoption was finalized. While pregnant with Christopher, Jasmine tested positive for methamphetamine and other drugs and received no prenatal care. She was incarcerated

2

when he was born in April 2004.  Jasmine was denied reunification services due to her child welfare history and a psychological evaluation stating her mental illness rendered her incapable of parenting.  The case closed in November 2005 when Christopher's adoption was finalized.

For five months in 2009, Jasmine was enrolled in the residential substance abuse treatment program at North County Serenity House.  She completed the program and achieved all treatment plan goals.  In May 2010, Jasmine entered the Kiva drug treatment program.  She completed the program in October.  In the fall of 2013, the police took Jasmine to the hospital because she was deemed a danger to herself and, in a separate incident, Jasmine was arrested for assaulting a nurse while on drugs.

In December 2013, the San Diego County Health and Human Services Agency (the Agency) filed a dependency petition for newborn L.S. based on Jasmine's untreated bipolar and schizoaffective disorders and her methamphetamine use, which had prevented her from caring for Anthony, A.B. and Christopher.  L.S. was detained with a nonrelative extended family member.

Jasmine said she had been in several rehabilitation programs, and had completed treatment approximately 13 times, but had been unable to stay sober for more than eight or nine months.  She had been hospitalized many times for mental health issues and had been in counseling, but had not taken prescribed psychotropic medication because she did not like the side effects and had not been under the care of a psychiatrist or therapist.  The nonrelative extended family member said she had tried to take Jasmine to the hospital during her pregnancy, but Jasmine had jumped out of the car on the freeway.

In February 2014, the court made true findings on the petition, denied Jasmine services and set a section 366.26 hearing.

Jasmine petitioned for review of the court's orders. (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452.) This court issued an order to show cause, the Agency responded and the parties waived oral argument.

DISCUSSION

"Reunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence," that the court terminated reunification services for a sibling or half sibling because the parent failed to reunify after the sibling's or half sibling's removal (§ 361.5, subd. (b)(10)), or the parent's rights over a sibling or half sibling were terminated (*id.*, subd. (b)(11)), and that, in either situation, the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling . . . ." (*Id.*, subd. (b)(10) & (11).) "The 'reasonable effort to treat' standard 'is not synonymous with "cure." ' [Citation.] The statute provides a 'parent who has worked toward correcting his or her problems an opportunity to have that fact taken into consideration in subsequent proceedings.' [Citation.] To be reasonable, the parent's efforts must be more than 'lackadaisical or half-hearted.' [Citation.]" (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393.) We review the court's findings for substantial evidence. (See *A.A. v. Superior Court* (2012) 209 Cal.App.4th 237, 242.)

Jasmine first contends the court did not apply the clear and convincing evidence standard of proof. The record belies this contention. Where, as here, there is no question as to the applicable standard of proof, the trial court need not articulate that standard and

4

it is presumed the court applied the correct standard. (*In re Fred J*. (1979) 89 Cal.App.3d 168, 175.) Contrary to Jasmine's assertion, there is no evidence the court here applied an incorrect standard. The court mentioned the clear and convincing evidence several times, even applying it to the jurisdictional findings, where the standard of proof is merely a preponderance of the evidence (§ 355, subd. (a)). Moreover, the court told Jasmine, "I just don't find that there's any evidence that you've really taken reasonable steps to address [the issues of substance abuse and mental health] in the more recent history . . . ." Jasmine argues this statement suggests the court relied only on the absence of evidence that she had failed to make reasonable efforts. The court's statement is more reasonably viewed as an affirmative finding that there was no evidence Jasmine had taken any reasonable steps to address her problems recently.

Jasmine next contends there was insufficient evidence she failed to make a reasonable effort to treat the problems that led to removal of her older children after the court terminated reunification services (§ 361.5, subd. (b)(10)), or terminated parental rights (*id*., subd. (b)(11)), in those children's cases. This contention lacks merit.

After Jasmine's services and parental rights were terminated in Anthony's case, she participated in services in A.B.'s case just a few weeks, failed to reunify and suffered termination of her parental rights to A.B. and Christopher. Several years later, Jasmine completed two substance abuse treatment programs but, a few years after that, she was using drugs again and exhibited mental instability. Jasmine claimed to have participated in drug and mental health treatment many times, but acknowledged she had been unable to stay sober, she had not been under the care of a psychiatrist or therapist and she had

5

not taken psychotropic medication because she did not like the side effects.  Shortly before the advent of this case, Jasmine was hospitalized involuntarily after she was found running in the street and was rambling, agitated and combative.  In the context of her extensive history of mental illness and drug abuse, her treatment efforts cannot be viewed as anything more than "lackadaisical or half-hearted" and far short of reasonable.  (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 99.)  Substantial evidence supports the court's finding that section 361.5, subdivision (b)(10) and (11) applied.

DISPOSITION

The petition is denied.

McINTYRE, J.

WE CONCUR:

NARES, Acting P. J.

McDONALD, J.