[No. E008470. Fourth Dist., Div. Two. Feb. 24, 1992.]

In re JESSE P., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JESSE P., Defendant and Appellant.

**[Opinion certified for partial publication.**]**

**Part III is not published as it does not meet the standards for publication contained in rules 976(b) and 976.1 of the California Rules of Court.

**COUNSEL**

A. William Bartz, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Janelle

B. Davis and Pamela A. Ratner, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

**HOLLENHORST, Acting P. J.**—Minor was declared a ward of the court and committed to the California Youth Authority after the court sustained a petition filed under Welfare and Institutions Code section 602,[1] finding that the minor had committed first degree murder. On appeal, minor contends the petition did not adequately advise him he was being charged with first degree murder. He also contends his confession was not voluntary.

I

FACTS

On March 13, 1990, the badly decomposed body of Joshua Martin was found in Honda Valley outside the city limits of Hesperia in San Bernardino County. The victim had been dead for at least one month at the time the body was discovered. The cause of death was multiple gun shot wounds to the body. Shell casings taken from the scene of the crime were tested and matched with shots from two guns owned by the minor's father which were recovered from a neighbor's house. The neighbor testified that near the end of February 1990, the minor's father had asked him to hold on to the guns.

Prior to his death the victim had been staying with the minor's family. Witnesses testified that he was last seen around that house around February 10 or 11, 1990, or possibly as late as February 15, 1990. According to various witnesses, prior to the victim's disappearance, the witnesses had heard various conversations between and statements made by the minor, the minor's father, Jason Franks and Trevor Freeman about killing the victim. Brian Kelly testified that he heard the minor say he was going to kill the victim by injecting him with Thorazine and later saw the minor melting down Thorazine. Eric Pampalos told authorities that on the night of the murder, he left the minor's house early because the minor told him he was going to kill the victim.

The day after the victim's disappearance, Brian Kelly testified that the minor, Jason Franks and Trevor Freeman returned to the minor's house carrying a shotgun and rifle. The minor said "You should have seen the way

---

[1]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

his head came apart." Other witnesses testified that after the incident they overheard the minor say he had never seen a head split apart like that.

The minor's confession was also offered into evidence. According to the officer who interviewed the minor, the minor admitted that on the night of the incident, Jason Franks put Thorazine in the victim's drink. When the minor thought the victim had passed out, he jumped on the victim and starting choking him. When the victim came to, a struggle ensued, with Jason Franks and Trevor Freeman holding the victim down until the minor had choked him unconscious. When the victim was unconscious, the minor's father came into the living room and told them to get rid of the victim. The minor, Jason and Trevor put the victim in the trunk of the car, drove out to the Honda Valley area and shot the victim a number of times.

## II

### PETITION

As noted, the minor's first contention is that the petition, which simply alleged that the minor committed murder, did not adequately advise him that he was being charged with first degree murder. The petition alleged that "[o]n or about February 11, 1990, in the County of San Bernardino, State of California, the crime of MURDER, in violation of PENAL CODE SECTION 187(a), a FELONY, was committed by the said minor . . . who did willfully, unlawfully, and with malice aforethought kill Joshua Abraham Martin, a human being."

It has long been the law in California that an accusatory pleading charging of murder in a criminal case need not specify the degree or the manner in which the murder is committed and thus encompasses both first and second degree murder as well as voluntary and involuntary manslaughter. (*In re Walker* (1974) 10 Cal.3d 764, 781 [112 Cal.Rptr. 177, 518 P.2d 1129]; *People v. Mosher* (1969) 1 Cal.3d 379, 399 [82 Cal.Rptr. 379, 461 P.2d 659]; *People v. Terry* (1962) 57 Cal.2d 538, 555 [21 Cal.Rptr. 185, 370 P.2d 985].) Defendant acknowledges this authority but claims that law does not or should not apply in a juvenile setting. He distinguishes these cases by noting that, unlike in a criminal case where the defendant has the benefit of a transcript of the preliminary hearing or the grand jury proceedings, here "[a]ll appellant had was a Petition which did not give him or his counsel notice that he was being charged with first degree murder."

It is true that in cases like *Mosher* and *Terry*, the court noted that the defendant received adequate notice not only by the accusatory pleading but

by his receipt of the preliminary hearing transcript. (*People* v. *Mosher, supra,* 1 Cal.3d 379, 399; *People* v. *Terry, supra,* 57 Cal.2d 538, 555-556.) It does not follow, however, that the absence of such a transcript requires a more detailed recitation of the facts in the petition.

■ "The 'preeminent' due process principle is that one accused of a crime must be 'informed of the nature and cause of the accusation.' (U.S. Const., Amend. VI.) Due process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*People* v. *Jones* (1990) 51 Cal.3d 294, 317 [270 Cal.Rptr. 611, 792 P.2d 643]; *People* v. *Thomas* (1987) 43 Cal.3d 818, 823 [239 Cal.Rptr. 307, 740 P.2d 419].) However, due process does not mandate any particular form of notice and the states are free to employ whatever procedures they choose so long as the procedures employed are sufficient to comport with due process. (*Garland* v. *Washington* (1914) 232 U.S. 642, 645 [58 L.Ed. 772, 775, 34 S.Ct. 456]; *People* v. *Covington* (1934) 1 Cal.2d 316, 319-320 [34 P.2d 1019].)

Without a doubt, a juvenile in a delinquency matter is entitled to the same constitutional guarantees of due process as those accorded an adult criminal defendant. (*In re Gault* (1967) 387 U.S. 1, 30-31 [18 L.Ed.2d 527, 547-548, 87 S.Ct. 1428.) This includes constitutionally adequate notice of the charges. (*Id.,* at pp. 33-34 [18 L.Ed.2d at pp. 549-550].) Due process concerns, however, do not require juvenile court procedures to be identical to those employed in adult criminal proceedings.

■ While a juvenile does not have the right to a preliminary hearing, he does have other avenues available to learn more detail about the charge in addition to the petition. As in adult proceedings, the minor can seek pretrial review of the sufficiency of the petition by way of motion akin to a demurrer. (*In re Fred J.* (1979) 89 Cal.App.3d 168, 176 [152 Cal.Rptr. 327].) The minor in this case did not raise any objection to the sufficiency of the petition by demurrer or otherwise.

■ The minor is also entitled to a detention hearing at which time the probation officer is required to present a prima facie case that the minor committed the offense. (§ 635; *In re William M.* (1970) 3 Cal.3d 16, 28, fn. 20 [89 Cal.Rptr. 33, 473 P.2d 737].) While a detention hearing is not equivalent to a preliminary hearing (*In re Korry K.* (1981) 120 Cal.App.3d 967, 971 [175 Cal.Rptr. 91]) the prima facie showing required at such hearing "amounts to 'sufficient cause' within the meaning of Penal Code sections 871 and 872. 'That phrase is generally equivalent to "reasonable

and probable cause" which has been defined as such a state of facts as would lead a man of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.]' " (*Edsel P. v. Superior Court* (1985) 165 Cal.App.3d 763, 780, fn. 10 [211 Cal.Rptr. 869].)

At the detention hearing the minor has the right to counsel, the privilege against self-incrimination and the right to confrontation and cross-examination. (§§ 630, subd. (b), 634.) He is entitled to be informed of the contents and meaning of the petition, the reasons he was taken into custody and the nature and possible consequences of the juvenile court proceedings and the purpose and the scope of the detention hearing. (§§ 633, 634; Cal. Rules of Court, former rule 1334, see now rules 1412, 1442.) While he does not have the right to present evidence of an affirmative defense, he does have the right to present evidence that he is not a danger to the community necessitating detention even though such evidence would constitute an affirmative defense at the jurisdictional hearing. (*In re Korry K., supra*, 120 Cal.App.3d 967, 971.) The minor is also entitled to a transcript of the hearing. (Cal. Rules of Court, rule 1411.) A detention hearing, including a prima facie showing that the minor committed the offense, was had in this case.

Finally, as in adult criminal matters, a juvenile is entitled to discovery. Upon the filing of the petition, he is entitled to copies of the police, arrest and crime reports relating to the pending matter. The petitioner has an affirmative duty to disclose any evidence and information in its possession or under its control which is favorable to the minor and to provide, upon timely request, probation reports, records of statements by the minor, other participants and witnesses, the names and addresses of all witnesses, expert reports, photographs or physical evidence and criminal records of witnesses each party intends to call. (Cal. Rules of Court, rule 1420.) The minor does not contend that the discovery in this case was inadequate.[2]

Thus minor had not only the petition but also the evidence revealed at the detention hearing and the evidence and other information available through discovery as well. We believe the minor's due process right to adequate notice of the nature of the charge and the factual basis for the charge is and was satisfied. (See *People v. Jones, supra*, 51 Cal.3d 294, 318:

---

[2]We acknowledge that the court in *Sallas v. Municipal Court* (1978) 86 Cal.App.3d 737 [150 Cal.Rptr. 543], concluded that a defective pleading is not cured by the availability of criminal discovery because one's due process right to adequate notice of the charge is "absolute, while one's entitlement to discovery [in a misdemeanor proceeding] is addressed to the trial court's discretion." (*Id.*, at p. 742.) However, here the petition is not defective per se and the right to discovery in a juvenile matter is not discretionary with the court. *Sallas* therefore is not controlling.

"given the availability of the preliminary hearing, demurrer and pretrial discovery procedures, the prosecution of child molestation charges based on generic testimony" does not violate due process right to fair notice of the charges.)

We also are unconvinced with minor's claim that he was unaware that the petition alleged both first and second degree murder and that he was prejudiced by the failure to specifically allege first degree murder. He does not attempt to explain how his defense would have been any different had the petition specifically alleged first degree murder but rather simply states he "*might* have taken a completely different tact [*sic*] in preparing for trial and presenting evidence during trial." We also note that the prosecutor argued first degree murder during his closing argument. At no time did minor's counsel object or express any surprise by this argument. Thus not only was it unnecessary to specifically allege first degree murder in the petition, minor has not established in any fashion that the failure to do so was prejudicial.

### III

### CONFESSION*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV

### DISPOSITION

Judgment affirmed.

McKinster, J., and McDaniel, J.,† concurred.

---

*See footnote, *ante,* page 1177.

†Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.