Filed 4/7/23 T.S. v. J.C. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| T.S., JR., | C095373 |
| Plaintiff and Respondent, | (Super. Ct. No. STA-FL-CUSU-2018-0003136) |
| v. | |
| J.C., | |
| Defendant and Appellant. | |

Family Code section 3044[1] establishes a rebuttable presumption that awarding custody of a child to a parent who has committed an act of domestic violence against the other parent within the previous five years is detrimental to the best interest of the child. In order to overcome this presumption, the offending parent must convince the court that an award of custody to that parent is in the child's best interest, and the court must make specified findings either on the record or in writing.

---

[1] Further undesignated statutory references are to the Family Code.

1

In this case, appellant J.C. (Mother) obtained a one-year domestic violence restraining order (DVRO) against respondent T.S., Jr., (Father). A year and a half later, the court denied Mother's request to modify a prior order that awarded Father joint custody of the couple's son and to award her sole custody. In denying the request, the court found section 3044's presumption against awarding custody to Father was inapplicable because the DVRO had expired.

Mother appeals, arguing section 3044's presumption remains in effect for five years regardless of whether an underlying DVRO has expired. We agree and thus reverse and remand to the trial court with directions to reconsider custody based on the presumption.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father began dating in 2014, and had a son, T.S., in March 2015. They were living together when the child was born, but the relationship ended several years later, and in December 2017, Mother and T.S. moved in with her family in San Francisco. Pursuant to an informal custody arrangement, T.S. lived with Mother during the week, and with Father on the weekends.

On June 6, 2018, Father filed a petition for custody and support of a minor child and a request for an order (RFO) seeking sole legal and physical custody of T.S.[2] Mother responded by seeking sole legal and physical custody of T.S.

On September 12, 2018, Father and Mother filed competing requests for DVROs against each other based primarily on an incident that occurred on June 4, 2018, when Mother and her sister picked T.S. up from Father's apartment.[3] Father claimed that

---

[2] We have been provided with a copy of the RFO, but not the petition for custody, although it appears a petition was filed.

[3] Although Mother's request was initially filed in San Francisco County Superior Court, it appears it was ultimately transferred to the San Joaquin County Superior Court.

Mother beat on his door, stormed into his apartment without being invited in, refused to leave when he asked her to, threatened him in some unspecified way, and threatened to call the police if he did not give T.S. to her. Mother claimed that Father threatened to kill her if she did not return T.S. to him on Thursday night, and told T.S. he would " 'only have a father' " if Father did not see him on Thursday. Mother also claimed that on December 6, 2016, Father "smacked [her] in [the] face" and would not let her get out of the car they were in.

Mother filed a declaration in response to Father's request for a DVRO that provided additional information about the June 4 incident.[4] Mother stated Father had T.S. on weekends pursuant to their informal custody arrangement, but he had recently started keeping him until Tuesday or Wednesday, and Mother became concerned that T.S. was missing too much preschool. June 4 was a Monday, and T.S. was scheduled to be in preschool that day. Mother had tried to contact Father that weekend to confirm he would be bringing T.S. back in time for school on Monday, but she had not been able to reach him. She thus drove to Father's apartment with her sister to pick him up. She arrived around 10:30 a.m. and went into Father's apartment, and the two of them got into an argument about where T.S. should go to school. Mother told Father she would bring T.S. back on Thursday, and Father responded, " 'I swear to god, if I do not get my son back on Thursday, you already know what will happen. I will get my gun and come out here. Anybody can get it. You, your sister, anybody.' " When T.S. was getting into the

_____

[4] Mother's response is dated August 3, 2018, and thus could not have been a filed in response to Father's September 12, 2018, DVRO request. We have not been provided with a complete copy of the record below. We have been provided with a declaration signed by Father on September 12, 2018, in which he states he had previously filed a DVRO request. We presume both of Father's DVRO requests were based on the June 4 incident, and Mother's August 3 response was filed in response to the first request.

car, Mother told him he would see his dad in a few days, and Father leaned in and told T.S., " 'if I don't see you on Thursday, just know that you're only going to have a dad.' "

Mother's declaration also provided additional information about the December 6, 2016, incident. She stated, "I was driving in a car with [Father] when he began accusing me of cheating on him. It became a verbal argument, and when I tried to exit the vehicle, [Father] grabbed me and pulled me back into the car. He struck me multiple times and held me down by the throat, making it hard for me to breathe. He also grabbed my phone and broke it. A passerby saw [Father] beating me and called the police, and a [police] car responded to the scene. After examining me, seeing my injuries and the broken phone, and speaking with [Father] and me, the police arrested [Father]." A copy of the police report was attached to the declaration.

On April 3, 2019, a trial was held on the competing DVROs and the custody issue. Mother was represented by counsel and Father represented himself. Both parties testified on their own behalf, and both called witnesses.

Mother testified about the December 6, 2016, incident in greater detail. The police eventually showed up and arrested Father, but Mother declined to press charges. During his testimony, Father denied hitting Mother, but acknowledged he went to jail as a result of the incident.

Mother also testified about the incident on June 4, 2018, in some detail. Her testimony was largely consistent with her declaration.

Mother's sister also testified about the June 4, 2018, incident. Her testimony was consistent with Mother's.

At the conclusion of the trial, the court took the matter under submission, and on April 10, 2019, it issued two orders: (1) an order after hearing, and (2) a DVRO. The order after hearing awarded sole legal and physical custody of T.S. to Mother. It also granted Father visitation. According to the order, no further hearings on the matter were

4

scheduled, and there is nothing on the face of the order that suggests it was temporary or pendente lite. We will refer to this order as the April 2019 custody order.

The DVRO ordered Father to stay away from and not to contact Mother, except as required for court-ordered visitation. The DVRO was initially set to expire on April 3, 2020, but it was extended to June 24, 2020, pursuant to Emergency Rule 8 of the California Rules of Court, which automatically extended certain dates during the state of emergency related to the COVID-19 pandemic. (See Cal. Rules of Court, appen. I, emergency rule 8.)

On October 21, 2020, approximately four months after the DVRO expired, Father filed an RFO seeking to change custody, and requesting joint legal and physical custody of T.S. On November 5, 2020, Mother filed her own RFO seeking to change the visitation schedule, and asking that Father have "No visitation" because he was not complying with the court-ordered visitation schedule and he "withholds child for multiple days and weeks since May 2020."

A hearing on both requests was held on December 8, 2020. Neither party was represented by counsel. At the start of the hearing, the trial court sent the parties to mediation, and they returned to court later that day with the mediator. The mediator stated the parties had come to an agreement on custody and visitation, but "because of how contentious the relationship is, I felt it necessary to put [the agreement] on the record." The mediator stated the parties had agreed to share joint legal custody of T.S.; that Mother would have physical custody; and to certain changes in the visitation schedule.

Following the hearing, on December 28, 2020, the court issued an order awarding joint legal custody of T.S. to both parents and maintaining physical custody with Mother. It also provided for a visitation schedule for Father. We will refer to this as the December 2020 custody order.

5

On June 29, 2021, Mother filed an RFO seeking to change custody and visitation. In support of the RFO, Mother stated that Father had not returned T.S. to her on May 4, 2021, as required by the December 2020 custody order, and that she had not seen T.S. for over six weeks. She stated she had filed multiple police reports documenting Father's failure to return T.S., and had sought the assistance of the Contra Costa County District Attorney's Office to retrieve him, to no avail. She noted the court had previously issued a DVRO against Father, and that she was unrepresented during the December 8, 2020, mediation and hearing. Finally, she stated that when she agreed to joint custody during mediation, she did not know the existence of a DVRO raised "a presumption against sharing joint custody . . . and that [Father] had the burden of overcoming that presumption."

In his response to the RFO, Father stated Mother had kept T.S. from him during his scheduled visitation time in late December 2020, and failed to show up at the scheduled drop-off location on two occasions in April 2021. He stated that when he picked T.S. up on May 4, 2021, T.S. "disclosed to me that [Mother] had been physically abusing him with a shoe." He reported the alleged abuse to child protective services (CPS), and was informed by "Inspector Rivera from the DA's office" that because there was an open CPS case, "I was within my rights to keep [T.S.] in my custody." He acknowledged he did not return T.S. to Mother until July 6, 2021, when Inspector Rivera informed him the CPS case had been closed and he had to return T.S. to his mother.

Mother filed a reply stating CPS had concluded the allegation of abuse was unfounded and had closed the case.

A hearing on the RFO was held on August 3, 2021. Mother was represented by counsel and Father represented himself. The mediator from the December 8, 2020, hearing was also present, and she stated, "the parties were here late last year and at that time they had the same, exact issue where both parties were withholding the child. And it seems like the matter presented before the court today is that again both parents withheld

6

the child from each other." Mother's counsel disagreed, stating: "The reason that we're in court today is that [Father] withheld the child for more than nine weeks. It took the involvement of the Contra Costa County District Attorney's Office to recover the child. Although there were allegations made about the safety of the child, those allegations were [found to be] unfounded by Child and Family Services." Mother's counsel also noted, "there was a domestic violence restraining order in this matter. It expired last year, I believe, but the presumption against joint custody was never overcome by [Father]. The only reason that the parties shared joint custody in December was that [Mother] agreed to it at the time, she was unrepresented, she did not understand what that meant or what the significance of that was. [¶] But there's been no effort on [Father's] part to overcome that presumption."

At the conclusion of the hearing, the court found it was in T.S.'s best interest to have the December 2020 custody order "remain as the custody order going forward." Mother's counsel asked the court what facts supported that order, in light of the fact that the issuance of the DVRO against Father gave rise to a rebuttable presumption against joint custody. The court responded, "the domestic violence restraining order has expired. I'm not hearing recent allegations of domestic violence regarding [Father]. . . . And based on my review of the case file, certainly at this point I'm finding it's going to be in the best interest of the child to have frequent and continuing contact with both parents."

On October 14, 2021, the court issued an order after hearing. The court denied Mother's request to modify the December 2020 custody order, and reiterated that the December 2020 custody order remained in effect and that the parties would continue to share joint legal custody of T.S., with Mother having sole physical custody. As relevant here, the court also ruled, "In reaching its decision to award the parties joint legal custody, the Court finds that because there is no domestic violence restraining order currently in effect, there is no need to address the Family Code Section 3044 presumption against joint custody."

7

On December 13, 2021, Mother filed a notice of appeal of the October 14, 2021, order.

## DISCUSSION

## I

### *Appealability*

We first address Father's threshold argument that the October 14, 2021, order is not appealable. We conclude the order is appealable pursuant to Code of Civil Procedure section 904.1, subdivision (a)(2), as an order made after a final judgment.

"It is settled that the right to appeal is strictly statutory, and a judgment or order is not appealable unless made so by statute. [Citation.] In civil matters, Code of Civil Procedure section 904.1 is the main statutory authorization for appeals. Code of Civil Procedure section 904.1, subdivision (a) provides in relevant part that an appeal may be taken from: a final judgment (subd. (a)(1)); an order made after an appealable judgment (subd. (a)(2)); or 'an order made appealable by the provisions of the . . . Family Code' (subd. (a)(10))." (*Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377.) Because the Family Code contains no express provision governing appeals of child custody orders (with limited exceptions that are not applicable here), "the right to appeal a child custody determination is generally limited to final judgments and orders made after final judgments." (*Ibid.*)

Father argues the October 14, 2021, order is neither a final judgment nor an order made after a final judgment. He argues the order Mother sought to modify (i.e., the December 2020 custody order) was a temporary custody order, and he cites the "well settled" rule "that temporary custody orders are nonappealable." (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1089.) He then argues that because the December 2020 custody order was a temporary order that was not appealable, it stands to reason that an order refusing to modify a temporary custody order is also not appealable. We disagree because Father focuses on the wrong order. Instead, we find the original April 2019

8

custody order was a final judgment, and the October 14, 2021, order is appealable as an order made after a final judgment. (Code Civ. Proc., § 904.1, subd. (a)(2).)

An "order's appealability is determined not from its form, but from its legal effect," and "we may consider orders a final judgment for purposes of appeal when . . . they have all the earmarks of a final judgment." (*Estate of Miramontes-Najera* (2004) 118 Cal.App.4th 750, 755.) "A judgment 'is the final determination of the rights of the parties in an action or proceeding.' (Code Civ. Proc., § 577.) Generally, a judgment is final ' "where no issue is left for future consideration except the fact of compliance or noncompliance with" ' the order." (*Baker v. Castaldi* (2015) 235 Cal.App.4th 218, 223.) An order is properly treated as a final judgment where it disposes of all issues between the parties and contemplates no further court action, such as a trial or the preparation of another order or judgment. (See *City of Calexico v. Bergeson* (2021) 64 Cal.App.5th 180, 192; *Baker*, at p. 223.)

During oral argument, Father's counsel argued that the April 2019 custody determination was made in connection with a DVRO hearing and is not a final judgment. We disagree.

Here, Father initiated the custody determination by filing a petition seeking sole legal and physical custody of T.S., and Mother responded by seeking sole legal and physical custody herself. Months later, Mother and Father filed their requests for DVROs. Following a one-day trial, the court issued the April 2019 custody order, awarding Mother sole legal and physical custody of T.S., and specifying a visitation schedule for Father. The court issued the order on Judicial Council form FL-341— Findings and Order after Hearing. This order resolved all issues raised in Father's petition and Mother's response thereto. Although it was denominated an "order" rather than a "judgment," there is no suggestion that it was temporary, and there is no suggestion that further court proceedings regarding custody would be held or were contemplated.

9

At the same time it issued this custody order, the court also issued the DVRO on Judicial Council form DV-130—Restraining Order After Hearing. Significant to our inquiry, the DVRO did not include a custody and visitation order, but rather referenced that such would "be prepared on a separate face." Although Father relies on the holding in *Smith v. Smith, supra*, 208 Cal.App.4th at p. 1089 in arguing that temporary custody orders issued in connection with DVRO hearings are not final orders and thus not appealable, we find the case before us factually distinct. The trial court in *Smith* granted a DVRO application which included *as an attachment*, child custody and visitation orders. (*Smith*, at p. 1078.) Furthermore, the order from which the appellant in *Smith* appealed, was clearly identified as a " 'temporar[y]' child custody/visitation" order. (*Id.* at p. 1089.) The court in *Smith* rejected the appellant's attempt to "cast the DVPA restraining order as a prior final judgment . . ." and cited *Keith R. v. Superior Court* for the rule that a domestic violence order under the Domestic Violence Prevention Act (DVPA) (§ 6200 et seq.) is not a permanent custody determination. (*Smith*, at p. 1090; see *Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1051.) That the trial court here may have held the hearings on the petition for custody and the application for a DVRO at the same time, does not mean that the resulting custody order was made in connection with granting the DVRO. Indeed, the custody order had its own life, independent of the DVRO application.

We find this case more like *Enrique M. v. Angelina V., supra*, 121 Cal.App.4th 1371. There, a father filed a complaint seeking custody of his son. Following a hearing, the trial court entered an order in June 1998 awarding joint legal custody to both parents, specifying the child would primarily reside with the mother, and gradually increasing the time the child was to spend with the father. (*Id.* at pp. 1373-1374.) Several years later, the mother obtained a DVRO against the father, and sought to change the father's visitation schedule. (*Id.* at pp. 1374-1375.) In June 2002, the parties entered into a stipulation and order signed by them and the court pursuant to which they agreed to

10

continue to share joint custody, and also agreed to modify the visitation schedule. (*Id.* at p. 1375.) In August 2002, the father filed a request to modify the visitation schedule again. The trial court denied the request by order dated January 7, 2003, and the father appealed. (*Id.* at p. 1376.) The appellate court requested supplemental briefing on whether the January 7, 2003, order was appealable, and ultimately held it was, explaining: "We conclude that the trial court's June 1998 order, entered after a hearing and determining the issues raised in [the father's] complaint, constituted an appealable 'final judgment[] as to custody,' " and that the January 7, 2003 order was thus "an appealable order after judgment." (*Id.* at p. 1378.)

So, too, in this case. We conclude the trial court's April 2019 custody order, which was entered after a trial and which determined the issues raised in Father's petition for custody and Mother's response thereto, constituted an appealable final judgment as to custody, and we also conclude that the October 14, 2021, order that is the subject of this appeal "is an appealable order after judgment." (*Enrique M. v. Angelina V., supra*, 121 Cal.App.4th at p. 1378; see also *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1088, fn. 2 [prior custody order entered after contested hearing reflected final judicial custody determination].)

## II

### *The Merits of the Appeal*

#### A.     *Governing Law and Standard of Review*

In making child custody determinations, the court's " 'overarching concern is the best interest of the child.' " (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955.) "In considering the impact of domestic violence on the 'best interest' of the child, the Legislature has declared that 'the perpetration of child abuse or domestic violence in a household where a child resides is detrimental to the health, safety, and welfare of the child.' (§ 3020, subd. (a).) This policy has been codified in section 3044 as a rebuttable presumption that sole or joint physical or legal custody of a child should not be given to a

11

parent who has perpetrated domestic violence." (*Noble v. Superior Court* (2021) 71 Cal.App.5th 567, 576.) Section 3044 provides, "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child, . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Sections 3011 and 3020. This presumption may only be rebutted by a preponderance of the evidence." (§ 3044, subd. (a).) "This presumption is mandatory and the trial court has no discretion in deciding whether to apply it." (*Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 661.) "[T]he court *must* apply the presumption in any situation in which a finding of domestic violence has been made. A court may not ' "call . . . into play" the presumption contained in section 3044 only when the court believes it is appropriate.' " (*In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1498.)

In order to rebut the presumption, section 3044 provides the court must find "[t]he perpetrator of domestic violence has demonstrated that giving [him or her] sole or joint physical or legal custody . . . is in the best interest of the child . . . . In determining the best interest of the child, the preference for frequent and continuing contact with both parents . . . may not be used to rebut the presumption, in whole or in part." (§ 3044, subd. (b)(1).) Section 3044 also contains a list of factors the court must consider in determining whether the presumption has been rebutted,[5] and it requires the court to

---

[5] The factors are: "(A) The perpetrator has successfully completed a batterer's treatment program that meets the criteria outlined in subdivision (c) of Section 1203.097 of the Penal Code. [¶] (B) The perpetrator has successfully completed a program of alcohol or drug abuse counseling, if the court determines that counseling is appropriate. [¶] (C) The perpetrator has successfully completed a parenting class, if the court determines the class to be appropriate. [¶] (D) The perpetrator is on probation or parole, and has or has not complied with the terms and conditions of probation or parole. [¶] (E) The perpetrator is restrained by a protective order or restraining order, and has or has not

make specific findings about each of those factors and to "state its reasons in writing or on the record" for finding the presumption has been rebutted. (§ 3044, subd. (f).) Finally, section 3044 provides, "In a custody . . . proceeding in which a party has alleged that the other party has perpetrated domestic violence in accordance with the terms of this section, the court shall inform the parties of the existence of this section and shall give them a copy of this section prior to custody mediation in the case." (§ 3044, subd. (h).)

" 'We review custody . . . orders for an abuse of discretion, and apply the substantial evidence standard to the [trial] court's factual findings. [Citation.] A court abuses its discretion in making a child custody order . . . if it applies improper criteria or makes incorrect legal assumptions.' [Citation.] If the presumption of section 3044 is triggered, the failure to apply it is an abuse of discretion. [Citation.]" (*Noble v. Superior Court, supra*, 71 Cal.App.5th at p. 578, italics omitted.)

B.    *Analysis*

Mother's argument in this case is the trial court erred in finding the section 3044 presumption did not apply because the DVRO had expired. We agree.

The court issued a DVRO against Father on April 10, 2019. A DVRO "must be based on a finding that the party being restrained committed one or more acts of domestic abuse, [and] a finding of domestic abuse sufficient to support a [DVRO] necessarily triggers the presumption in section 3044." (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1267.) "If a domestic violence restraining order has been issued, then it is clear that there has been a finding of domestic violence sufficient to trigger the presumption of section 3044." (*In re Marriage of Fajota, supra*, 230 Cal.App.4th at p. 1500, fn. 10.) The DRVO that was issued in this case thus constitutes a finding that Father committed

---

complied with its terms and conditions. [¶] (F) The perpetrator of domestic violence has committed further acts of domestic violence. [¶] (G) The court has determined, pursuant to Section 6322.5, that the perpetrator is a restrained person in possession or control of a firearm or ammunition in violation of Section 6389." (§ 3044, subd. (b)(2).)

domestic violence and triggers the presumption in section 3044.

Although the DVRO in this case expired in June 2020, "Section 3044's presumption remains in effect for five years regardless of whether an underlying domestic violence restraining order has expired." (*Celia S. v. Hugo H., supra*, 3 Cal.App.5th at pp. 665-666.) The trial court thus erred when it found "because there is no domestic violence restraining order currently in effect, there is no need to address the Family Code Section 3044 presumption against joint custody."

Father does not dispute that the DVRO triggers the presumption in section 3044, regardless of the fact that it has expired. He thus does not dispute that the trial court erred when it found otherwise. He nonetheless argues section 3044 and/or its presumption are inapplicable for three reasons, and he cites "the settled principle of appellate review that a correct decision of the trial court must be affirmed on appeal even if it is based on erroneous reasoning." (*Green v. Superior Court* (1985) 40 Cal.3d 126, 138.)

First, Father argues that the presumption only applies if there is a finding by the court that a party seeking custody "perpetrated domestic violence *within the previous five years*." (§ 3044, subd. (a), italics added.) In this case, although the DVRO was issued on April 10, 2019, it does not identify what act or acts of domestic violence Father committed or when those acts occurred.[6] Father thus argues, "Without any specific finding in connection with the [DVRO], it cannot be concluded that there was a 'finding by the court that a party seeking custody of a child has perpetrated domestic violence *within the previous five years*' of the October 14, 2021 order." We disagree.

Mother requested a DVRO by utilizing a mandatory Judicial Council form—DV-100—created for that purpose. Part 27 of that form asks her to describe how Father

---

[6] The DVRO is a Judicial Council form (Judicial Council Forms, form DV-130), and the form contains no space to make findings about the alleged domestic violence.

14

abused her. In response, she stated the "most recent abuse" was the June 4, 2018, incident, and she described that incident. She also identified one other incident of abuse—the December 6, 2016, incident where Father hit her inside her car. Those are the only two incidents of abuse identified in the request for a DVRO, and both incidents occurred within five years of the October 2021 order.

Father notes that, at the trial on the DVROs, Mother also testified about two other incidents of abuse, one in 2015 and one in August 2016. He argues the DVRO thus could have been based on these two incidents, both of which occurred more than five years before the October 2021 order. We disagree, because, as just noted, Mother's request for a DVRO identified only the June 4, 2018, and December 6, 2016, incidents. We will not assume the trial court issued the DVRO based on incidents that were not identified in the request, because doing so would raise serious due process concerns. (See, e.g., *In re A.L.* (2015) 233 Cal.App.4th 496, 499 [due process requires adequate notice of the charges so person accused may prepare an intelligent defense]; *In re Jesse P.* (1992) 3 Cal.App.4th 1177, 1182 [" 'Due process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial' "].)

Father argues section 3044 is inapplicable for a second reason. He notes it creates a rebuttable presumption against an "*award* of sole or joint physical or legal custody" to a person who has perpetuated domestic violence. (§ 3044, subd. (a), italics added.) According to Father, the trial court's October 14, 2021, order did not award him custody within the meaning of section 3044. Instead, it denied Mother's request to change a prior award of custody (i.e., the December 2020 order awarding joint legal custody to both parents). Citing a dictionary definition of the term award as " 'something that is conferred or bestowed,' " Father argues an order declining to change custody is not equivalent to an award of custody within the meaning of section 3044 because it does not

15

confer or bestow anything on anyone and merely maintains the status quo.**7** We disagree, because case law teaches that the presumption in section 3044 applies to "orders granting *or affirming* joint legal custody," and we find the October 14, 2021, order was an order affirming joint legal custody. (*In re Marriage of Fajota, supra*, 230 Cal.App.4th at p. 1498, italics added.)

The facts in this case are similar to the facts in *In re Marriage of Fajota*. In that case, the wife sought a DRVO against her husband, filed a petition for dissolution of the marriage, and sought sole custody of their children. The trial court denied the request at a hearing held on the DVRO. (*In re Marriage of Fajota, supra*, 230 Cal.App.4th at pp. 1490-1492.) Subsequently, the trial court entered an order awarding the parties joint legal custody of their children. (*Id*. at pp. 1492-1493.) Six weeks later, the wife filed a second request for a DVRO based on conduct that had occurred after the hearing on the first request. Following a hearing on this second request, the court issued a one-year DVRO, but "did not revisit the award of joint legal custody, despite having issued a restraining against [the husband] based on domestic violence. . . . Although the court recognized the existence of the presumption against joint custody [in section 3044], the court did not apply the presumption in making its custody order. Instead, the court stated, 'If you currently have joint, legal custody—at this point, I'll leave that in place.' " (*Id*. at pp. 1495-1496.) That same day, the court entered a judgment of dissolution, terminating the parties' marriage, and ordering that the parties would share joint legal custody. The wife appealed, and the appellate court reversed because there was "no indication in the record that the judges who made orders granting *or affirming* joint legal custody for [the father] applied the mandatory presumption provided in section 3044." (*Id*. at p. 1498, italics added.) As relevant here, the appellate court held the judge who issued the DVRO

---

**7** Father's request that we judicially notice the dictionary definition of the word "award" is granted.

should also have applied the presumption in section 3044 and reconsidered the prior order awarding joint custody to both parents, and that the failure to do so was an abuse of discretion. (*Fajota*, at p. 1500.) It also held, "There is no reasonable basis for the trial court's failure to apply the section 3044 presumption *at either of the two hearings at which the court addressed custody in this case*." (*Ibid*., italics added.)

As in *In re Marriage of Fajota*, the trial court in this case awarded the parties joint legal custody, and then subsequently denied Mother's request to modify that award after the section 3044 presumption was brought to its attention and instead left the prior order in place. We agree with the *In re Marriage of Fajota* court that the trial court should have considered and applied the section 3044 presumption both when it initially awarded Mother and Father joint legal custody in December 2020, and when it denied Mother's request to change custody in October 2021.

*Noble v. Superior Court, supra*, 71 Cal.App.5th 567 is also similar. In that case, the wife began dissolution proceedings in California and sought custody of the couple's two children. (*Id.* at pp. 571-572.) Thereafter, she obtained a protective order against the husband in a Utah court based on threats of physical violence. (*Id.* at p. 573.) At a hearing regarding custody, the California court temporarily granted the parties joint legal and physical custody "[w]ithout mentioning section 3044," despite having been informed of the Utah court's order. The court also ordered the parties to attend custody mediation. (*Id*. at p. 574.) At the mediation, the parties reached a temporary agreement on visitation and custody, and the mediator submitted a recommendation to the court that incorporated the parties' agreement and that also noted the court had previously ordered the parties to share custody of the children. (*Id*. at pp. 574-575.) At a subsequent hearing, the court adopted the mediator's recommendation, again "without mentioning section 3044." (*Id*. at p. 575.) Six months later, the parties filed competing motions to modify custody, with each seeking sole legal and physical custody of the children. Following a hearing, the trial court "left the joint custody order in place" pending further proceedings. (*Ibid*.) The

17

wife filed a petition for writ of mandate seeking an order compelling the trial court to vacate its interim orders granting the father joint custody of the children and to enter a new order after considering the section 3044 presumption, and the appellate court granted the petition. (*Noble*, at p. 571.)[8] As relevant here, the appellate court agreed with the wife that "the family court erred by failing to apply section 3044's rebuttable presumption when making its February and August 2020 custody orders," and it held, "the court is required to determine whether section 3044 applies *whenever there is an evidentiary hearing or trial in which custody orders are sought and domestic violence has been alleged.*" (*Noble*, at pp. 579, 580, italics added.)

As in *Noble v. Superior Court*, the trial court in this case awarded the parties joint legal custody based on their agreement, and then subsequently "left the joint custody order in place" after Mother asked for sole custody. Also as in *Noble*, we find the trial court "erred by failing to apply section 3044's rebuttable presumption when making" both orders, and we agree with the *Noble* court's holding that section 3044 applies "whenever there is an evidentiary hearing . . . in which custody orders are sought and domestic violence has been alleged." Here, the August 3, 2021, hearing on Mother's RFO was an evidentiary hearing at which custody orders were sought and domestic violence was alleged, and the trial court was thus required to apply section 3044's presumption.

Father's final argument is that the presumption in section 3044 has been rebutted as a matter of law by another presumption—namely, the presumption in section 3080,

---

[8] The appellate court "originally denied the petition, noting it challenged a temporary order and the dissolution matter was still pending. Thereafter, the California Supreme Court granted [the wife's] petition for review and transferred the matter to [the appellate court] with directions to vacate [the] order denying the petition and issue an order directing the parties to show cause why the relief sought in the petition should not be granted." (*Noble v. Superior Court, supra*, 71 Cal.App.5th at p. 571, fn. 2.)

which provides, "There is a presumption, affecting the burden of proof, that joint custody is in the best interest of a minor child, subject to Section 3011, where the parents have agreed to joint custody or so agree in open court at a hearing for the purpose of determining the custody of the minor child." Father notes the December 2020 order awarding him joint legal custody of T.S. was based on an agreement that the parties reached during mediation, and he argues, "Therefore, even if there was a presumption . . . under section 3044 that awarding [him joint legal] custody of T.S. was not in the child's best interest, that presumption was, pursuant to section 3080, rebutted in December 2020 by the fact that [Mother] consented to shared custody." We disagree.

First, there is nothing in the language of either statute that suggests the presumption in section 3080 that joint custody is in the best interest of the child when the parents agree to it legally rebuts the presumption in section 3044. Indeed, the language of section 3080 itself strongly suggests otherwise. It states the presumption that joint custody is in the best interest of the child when the parties agree to it is "subject to Section 3011." (§ 3080.) Section 3011 provides that, in determining the best interest of the child, the court "shall" consider (1) the health, safety, and welfare of the child, and (2) a history of abuse by the parent seeking custody. (§ 3011, subd. (a).) In this regard, we note that the Legislature has expressly found and declared that "the perpetuation of . . . domestic violence in a household where a child resides *is detrimental to the health, safety, and welfare of the child*." (§ 3020, subd. (a), italics added.) We thus interpret section 3080's reference to section 3011 to mean that a court cannot ignore a history of domestic violence or abuse simply because the parties agree to joint custody. Instead, section 3080 requires the court to decide whether joint custody is in the best interest of the child given that history, and section 3044 then reinforces this by creating a rebuttable presumption against joint custody if there has been a court finding of domestic violence within the previous five years.

19

Second, when Mother agreed to joint custody during mediation, she was unrepresented and unaware of section 3044's presumption because the trial court failed to fulfill its obligation to inform her of that presumption and to give her a copy of section 3044. Section 3044 provides, "In a custody or restraining order proceeding in which a party has alleged that the other party has perpetrated domestic violence in accordance with the terms of this section, the court *shall* inform the parties of the existence of this section and shall give them a copy of this section prior to custody mediation in the case." (§ 3044, subd. (h), italics added.) This provision was added to section 3044 by Senate Bill No. 265 (2003-2004 Reg. Sess.). An Assembly analysis of this provision explains, "many domestic violence victims are unaware that they do not have to agree to joint custody during court ordered mediation. The author states, 'Since most custody cases are resolved in mediation and mediation often involves encouraging couples to agree to joint parenting, many battered victims and their children are not benefiting from the policy behind Section 3044.' " (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 265 (2003-2004 Reg. Sess.) as amended June 12, 2003, p. 3.)

Here, at the start of the December 8, 2020, hearing on the parties' competing RFOs to modify custody and visitation, the court sent the parties to mediation without informing them of the existence of section 3044 or providing them a copy of it. When the parties and the mediator returned to court later that day, they did not mention section 3044. Indeed, the transcript of the December 8 hearing contains no reference to section 3044 at all. When it sent the parties to mediation, the court knew (or should have known) that there were allegations of domestic violence in the case because (1) it had issued a DVRO against Father a little over a year and a half ago, and (2) Mother's RFO identified the DVRO. The court was thus required by section 3044 to inform the parties of its existence and to provide them with a copy before sending them to mediation. Because it failed to do so, Mother was "unaware that [she did] not have to agree to joint custody during court ordered mediation," and thus unable to " 'benefit[] from the policy behind

20

Section 3044.' " (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 265 (2003-2004 Reg. Sess.) as amended June 12, 2003, p. 3.) We will not interpret section 3080's presumption as effectively binding Mother to an agreement she made during a mediation where, as here, the court failed to comply with its statutory obligation to inform the parties about the existence of section 3044 and its presumption against joint custody.

## DISPOSITION

The trial court's October 14, 2021, order that Mother and Father shall continue to share joint legal custody of T.S. is reversed. On remand, the trial court shall determine legal custody of T.S. after applying the presumption set forth in section 3044. Mother shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/
EARL, J.


We concur:


/s/
ROBIE, Acting P. J.


/s/
DUARTE, J.

21