Filed 6/6/23 In re J.T. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| In re J.T., a Person Coming Under the Juvenile Court Law. | C096904 |
| THE PEOPLE, | (Super. Ct. No. 22JU000066) |
| Plaintiff and Respondent, | |
| v. | |
| J.T., | |
| Defendant and Appellant. | |

J.T. (the minor) appeals a dispositional order finding him a ward of the court after the juvenile court determined the minor had committed a lewd and lascivious act on his half sister E.L.C. (In accordance with California Rules of Court, rules 8.401(a) and 8.90, this opinion takes steps to protect the anonymity of the minor, the victim, and their relatives.) The minor argues: (1) the juvenile court violated due process because the

1

wardship petition did not separately allege the minor violated Penal Code section 288, subdivision (a) (statutory section citations that follow are found in the Penal Code unless otherwise stated); (2) if the former argument was forfeited, his counsel was ineffective for not objecting to the juvenile court's determination that he violated this section; and (3) insufficient evidence supports the juvenile court's determination that he violated section 288, subdivision (a) because his half brother E.W.C.'s testimony was inherently improbable. Finally, the minor requests we strike the juvenile court's determination of his maximum confinement time as unauthorized because he was not removed from his parents' custody at disposition.

We will modify the judgment to strike the maximum term as requested. We otherwise affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

A Butte County wardship petition alleged: "On or about and between April 23, 2019 and July 10, 2021 . . . the crime of CONTINUOUS SEXUAL ABUSE, in violation of PENAL CODE SECTION 288.5(a), a felony, was committed by [the minor who] did unlawfully engage in three and more acts of 'substantial sexual conduct,' as defined in Penal Code Section 1203.066(b), and three and more 'lewd and lascivious acts', as defined in Penal Code Section 288, with E.[L.]C., age 9, a child under the age of 14 years, while [the minor] resided with, and had recurring access to E.[L.]C., age 9, the child." (Bold omitted.)

At the March 23, 2022, contested jurisdictional hearing on these allegations, the People presented the testimony of E.L.C., E.W.C., and their mother, Elizabeth C. According to Elizabeth C., E.L.C. was diagnosed with learning disabilities, including an auditory processing problem that interferes with her ability to understand and respond to questions. Her disability also made it difficult for her to remember specific dates, for example, E.L.C. would know the month of her birth, but not the specific date. The

2

allegations covered a period starting while distance learning during the COVID-19 pandemic and continued through the return to school when E.L.C. was held back to repeat the second grade.

Following questions confirming E.L.C. knew the difference between the truth and a lie, she testified the minor and E.W.C. were her brothers, and grandma Nancy was her grandma. Good touches were like hugs and bad touches included punches and being touched in a way that E.L.C. did not want to be touched. E.L.C. had suffered bad touches by the minor. The bad touches had happened more than once, when she was in the second grade (ages seven and eight), and occurred upstairs in the bedroom shared by the minor and E.W.C. Grandma had been home, but she never came upstairs given her physical limitations.

E.L.C. was on the minor's bed, and he touched her on her sides and hips. He also touched her in her private area (which she called her "vagigi") when her clothing was around her ankles and his clothing was down to his knees. This happened five or more times. The touching would last about a minute and ended when E.W.C. would look up from his video game toward them and ask what they were doing. The minor also had E.L.C. touch his private area, which she did because she was afraid he would hurt her. The minor told her not to tell anyone because if she did he would go to jail. E.L.C. confided in E.W.C., and the two of them told her sister, M.C.

E.W.C. testified he saw the minor giving E.L.C. a bad touch while they were in his bedroom, and he was playing video games. E.L.C. and the minor were under the covers so he could not see what they were doing. However, whenever he looked back, the minor would jump and then freeze. E.W.C. heard the minor threaten E.L.C. that if she did not do as he asked, the minor would tell their stepfather that E.L.C. had not done her chores, and she would get in trouble. This had happened more than once on the minor's bed, but E.W.C. did not recall if it had happened more than three times. These incidents happened during the two years E.L.C. was in the second grade.

3

E.W.C. and E.L.C. were worried they would get in trouble, so they told their sister M.C. what was happening, but asked her not to tell anyone. E.W.C. told M.C. that E.L.C. was "assaulted," which he explained was "like raped." E.W.C. explained "raped" meant "[m]aking somebody do inappropriate stuff when they don't want to do it." When asked why E.W.C. thought the minor had raped E.L.C., he responded, "I just, like assumed, because like every time I looked back, they were always like under blankets and doing all this weird stuff that I would, obviously, think that." He denied seeing anything because they were under the blankets. E.W.C. did not recall seeing E.L.C. on top of the minor, seeing the two naked together, or seeing her suck the minor's penis. When E.W.C. would ask, the minor would deny he was doing anything.

Following a recess wherein E.W.C. reviewed a transcript of his interview with the District Attorney's office, E.W.C. retook the stand. E.W.C. now remembered that he saw E.L.C. sucking the minor's penis. She was missing some of her clothes and was on her knees, while the minor was standing. Before that happened, the minor told E.L.C. he would do the chores, but after the assault, he threatened her that if she did not do the chores, he would tell her stepfather. E.W.C. also remembered the minor told E.L.C. to come upstairs and get into his bed. Most of the time when E.W.C. would turn around to look at them, they would be side by side in the bed under the covers. However, if E.W.C. snuck a peak, he would see E.L.C. on top of the minor, and the minor would be lifting his hips up and down. E.W.C. thought seeing E.L.C. on top of the minor happened a different time from seeing her suck his penis, but he still could not recall the number of times it had happened. Finally, E.W.C. recalled the minor really liked a girl named Riley Reid.

Thereafter, the court questioned E.W.C., confirming he had told the truth when he first testified that he did not remember some things happening and told the truth later when he testified that other things had, in fact, happened. E.W.C. now remembered the things he told the interviewer and had told the truth when he spoke with that interviewer.

4

The minor, who was 15 years old, testified in his defense, denying he had ever touched E.L.C. in a sexual way or had her suck his penis. He posited the children had made false accusations because their father, Edgar C., went to prison for physically abusing him. Nonetheless, the minor admitted he had been meaner to E.L.C. than "most brothers would be," and was familiar with Riley Reid (a porn star) because he watched porn.

In rebuttal, the People recalled Elizabeth C., who testified that when Edgar C. went to jail, she was pregnant with E.L.C. and E.W.C. was two years old.

The parties submitted the case on the evidence without argument, and the juvenile court found jurisdiction over J.T. by virtue of its determination beyond a reasonable doubt that the minor had committed a single count in violation of section 288, subdivision (a). In making this determination, the court recognized caselaw established section 288 violations were not necessarily lesser included offenses of section 288.5 because of the differing mens rea; however, because the court was the trier of fact, the court was confident in its ability to determine beyond a reasonable doubt that the minor had committed a single violation of section 288, subdivision (a) (here oral copulation), even though it determined the People had not established a violation of section 288.5. The minor did not object.

The matter was later transferred to Tehama County for the dispositional hearing, and on August 30, 2022, the juvenile court adjudged the minor a ward of the court, placing him on probation under various terms and conditions. While the minor lived with his father, the court nonetheless determined his maximum term of confinement was eight years. The minor timely appealed, and appellate briefing in this matter was completed on April 3, 2023.

5

DISCUSSION

I

*Due Process*

The minor complains the juvenile court violated his due process right to notice of charges when it determined he had violated section 288, subdivision (a), but the wardship petition only alleged a violation of section 288.5. The People counter the minor's failure to object to this determination has forfeited this argument. We will not decide the forfeiture issue in light of defendant's alternative ineffective assistance of counsel claim. Addressing his argument on the merits, we are unpersuaded.

As the Supreme Court explained in *In re Robert G*.: " ' "When a defendant pleads not guilty, the court lacks jurisdiction to convict him of an offense that is neither charged nor necessarily included in the alleged crime. [Citations.] This reasoning rests upon a constitutional basis: 'Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' [Citation.]" [Citation.]' [Citation.]" (*In re Robert G*. (1982) 31 Cal.3d 437, 440.)

"[T]he notice required by due process is given, with respect to lesser offenses, either 'when the specific language of the accusatory pleading adequately warns the defendant that the People will seek to prove the elements of the lesser offense' [Citations], or when 'the lesser offense is "necessarily included" within the statutory definition of the charged offense . . . .' [Citations.] . . ." (*In re Robert G*., *supra*, 31 Cal.3d at pp. 440-441.)

Thus, in *In re Robert G.,* the high court held, "a wardship petition under [Welfare and Institutions Code] section 602 may not be sustained upon findings that the minor has committed an offense or offenses other than one specifically alleged in the petition or necessarily included within an alleged offense, unless the minor consents to a finding on

6

the substituted charge." (*In re Robert G.*, *supra*, 31 Cal.3d at p. 445.) Accordingly, because the minor in that case "was not accused of battery in the language of the wardship petition" and battery was not a necessarily included offense of assault with a deadly weapon, the juvenile court's finding that the minor had committed battery where only assault had been charged required reversal of the court's wardship order. (*Id.* at pp. 441-445.) Unlike the minor in *In re Robert G.*, here, the wardship petition provided notice of the intent to prove violations of the section ultimately utilized by the court to find defendant a ward of the court.

"Section 288.5 was enacted in 1989 in order to remedy some of the problems of pleading, proof and jury instruction that had arisen in the prosecution of 'resident child molesters' under section 288. (See *People v. Jones* (1990) 51 Cal.3d 294, 328-330 (dis. opn. of Mosk, J.); *People v. Superior Court* [] (1990) 221 Cal.App.3d 1190, 1195.)" (*People v. Avina* (1993) 14 Cal.App.4th 1303, 1308.) In pertinent part, section 288.5 prescribes "three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, *or* three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense." (§ 288.5, subd. (a), italics added.) In keeping with the alternative ways of establishing a violation of section 288.5, caselaw has determined that a violation of section 288 is not necessarily a lesser included offense of section 288.5. (See, e.g., *Avina*, at pp. 1313-1314 [no sua sponte duty to provide lesser included section 288 jury instructions]; *People v. Valdez* (1994) 23 Cal.App.4th 46, 48-49 [rejecting contention that defendant was improperly prosecuted for violations of both section 288 and 288.5].)

These authorities, however, do not decide the issue before this court. We are not called upon to decide whether under the statutory definition of section 288.5, section 288 is a necessarily included offense. (*People v. Fontenot* (2019) 8 Cal.5th 57, 73 [cases are not authority for propositions not considered].) Rather, here, the wardship petition

expressly contained allegations that the minor had committed a violation of section 288. Specifically, the petition alleged the minor had committed "three and more acts of 'substantial sexual conduct,' as defined in Penal Code Section 1203.066(b), *and three and more 'lewd and lascivious acts,' as defined in Penal Code Section 288*." (Italics added.) Therefore, the wardship petition put the minor on notice of the People's intent to prove three or more violations of section 288 as part of their case. In these circumstances, the juvenile court's finding that the minor had committed one act in violation of section 288, subdivision (a) does not run afoul of due process.

In light of this conclusion, we find it unnecessary to decide whether a wardship petition alleging alternative violations of section 1203.066 *or* section 288 would provide sufficient notice. The wardship petition in this case specifically alleged the People would prove three or more violations of *both* of these provisions. Therefore, it is of no moment that a violation of section 288.5 could be established without also proving a violation of section 288. (See § 288.5 [defining the bad proscribed conduct as either substantial sexual conduct under section 1203.066 OR lewd or lascivious conduct under section 288]; 1 CALCRIM No. 1120 [same]; c.f., *People v. McCarthy* (2016) 244 Cal.App.4th 1096, 1109-1110 [upholding award of noneconomic restitution for a section 288.5 conviction where pleading and proof showed that conviction was based upon underlying section 288 violations].)

Moreover, defendant has not shown the People's failure to specifically include subdivision (a) in the section 288 allegations prejudiced him. (See, e.g., *In re Jesse P.* (1992) 3 Cal.App.4th 1177, 1184 [no showing failure to specify the *degree* of murder charged was prejudicial].) On the contrary, subdivision (a) of section 288 prescribes the unlawful conduct for a child within E.L.C.'s age range, and her age was alleged in the wardship petition. Accordingly, we find the juvenile court's order finding the minor a ward of the court by virtue of his violation of section 288, subdivision (a) complied with due process.

8

## II

### *Sufficiency of the Evidence*

The minor argues in the alternative that insufficient evidence supports the juvenile court's determination that he violated section 288, subdivision (a) because his half brother E.W.C.'s testimony was inherently improbable. In so doing, he does not challenge that E.W.C.'s testimony he saw E.L.C. sucking the minor's penis, if believed, would be sufficient to sustain a finding that he committed a section 288, subdivision (a) violation. Applying applicable standards of appellate review, we cannot substitute our judgment for that of the juvenile court.

We review the juvenile court's finding using the same standard we would in an adult proceeding. (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.) In determining a sufficiency of the evidence challenge, we "review the whole record in the light most favorable to the judgment . . . to determine whether it discloses substantial evidence— that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) "The focus of the substantial evidence test is on the *whole* record of evidence presented to the trier of fact, rather than on ' "isolated bits of evidence." ' [Citation.]" (*People v. Cuevas* (1995) 12 Cal.4th 252, 261.) "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) In other words, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055.) " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not

9

warrant a reversal of the judgment." ' [Citations.]" (*People v. Bean* (1988) 46 Cal.3d 919, 933.)

"Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) While a reviewing court will not uphold a judgment or verdict based upon evidence that is inherently improbable, testimony that merely discloses unusual circumstances does not come within that category. (*People v. Barnes* (1986) 42 Cal.3d 284, 306.) Evidence is inherently improbable when it is either physically impossible or its falsity is apparent without resorting to inferences or deductions. (*Ibid.*) " ' "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." ' [Citation.]" (*Ibid.*)

The minor asks this court to find E.W.C.'s testimony that he witnessed E.L.C. sucking the minor's penis was inherently improbable in light of E.W.C.'s earlier testimony that he did not recall seeing that act. However, following this change in testimony, the juvenile court itself questioned E.W.C. concerning the change and thereafter found the evidence establishing the oral copulation was credible. We are not at liberty to disregard this credibility determination, thus dooming the minor's challenge. (*People v. Barnes*, *supra*, 42 Cal.3d at p. 306.) In light of this determination, we will not address the minor's attempts to undermine other evidence buttressing the court's finding that the minor violated section 288, subdivision (a).

## III

### *The Maximum Term of Confinement*

The parties agree and we concur that the juvenile court erred in setting the minor's maximum confinement time where the minor was not removed from his parents' custody at disposition.

Welfare and Institutions Code section 726 provides: "If the minor is removed from the physical custody of the minor's parent or guardian . . . the order shall specify that the minor may not be held in physical confinement for a period in excess of the middle term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (Welf. & Inst. Code, § 726 subd. (d).)

When a minor is not removed from the physical custody of his or her parent or custodian as a result of criminal violations sustained under section 602, section 726, subdivision (d) does not apply, and the juvenile court is without authority to set a maximum term of confinement. (*In re Matthew A.*, *supra*, 165 Cal.App.4th at p. 541; *In re Ali A.* (2006) 139 Cal.App.4th 569, 571 ["When a juvenile ward is allowed to remain in his parents' custody, there is no physical confinement and therefore no need to set a maximum term of confinement"], overruled on another ground in *In re A.C.* (2014) 224 Cal.App.4th 590, 592.) Here, the minor was not removed from parental custody. Accordingly, the juvenile court erred in specifying a maximum term of confinement. The remedy for this error is to strike the term. (*In re Matthew A.*, at p. 541.)

We will therefore modify the judgment to strike the maximum term of confinement imposed by the juvenile court.

## DISPOSITION

The judgment is modified to strike the minor's maximum term of confinement. The juvenile court is directed to correct its associated orders to remove the maximum confinement term. The judgment is affirmed as modified.

 

_____

HULL, Acting P. J.

We concur:

_____

KRAUSE, J.

_____

BOULWARE EURIE, J.